IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LEON STAMBLER, | § |
| Plaintiff, | § § § § |
| v. | § CIVIL ACTION NO. 2:08-CV-462-DF § § |
| MERRILL LYNCH & CO., INC., *et al*., | § § |
| Defendants. | § § |

## MOTION TO STAY PENDING THE OUTCOME OF
## A RELATED DECLARATORY JUDGMENT ACTION

Defendants The Charles Schwab Corporation; Charles Schwab & Co., Inc.; Charles Schwab Bank; E*TRADE Financial Corporation; E*TRADE Bank; Fidelity Brokerage Services LLC; National Financial Services LLC; FMR LLC; Paypal, Inc.; and American Express Company (collectively, "Defendants") hereby respectfully move to stay all further proceedings in this action pending the outcome of a related declaratory-judgment action in this Court — *Stambler v. VeriSign, Inc.*, No. 2:08-cv-00348-DF (the "Stambler DJ Action") — which was filed on September 12, 2008 by the Plaintiff in this action, Leon Stambler ("Stambler").

## INTRODUCTION

Resolution of the Stambler DJ Action may dispose of this action in its entirety. As a result, staying this action pending resolution of the Stambler DJ Action will promote judicial economy and efficiency, and may avoid the needless waste of countless hours by the Court and countless millions in legal fees by the 46 defendants.

In this action, Stambler asserts patent infringement by dozens of banks and other companies with respect to two patents, U.S. Patent Nos. 5,793,302 (the "'302 patent") and

5,975,148 (the "'148 patent") (collectively, "the Asserted Patents"). The Asserted Patents, however, were also the subject of an earlier lawsuit decided against Stambler in the United States District Court for the District of Delaware, *Stambler v. RSA Security, Inc., et al.*, No. Civ. A. 01-0065-SLR (D. Del.) (the "Delaware Action"). VeriSign, Inc. ("VeriSign") was a defendant in the Delaware Action and its Secure Sockets Layer technology ("SSL") was found by a jury not to have infringed the Asserted Patents. That verdict was upheld by both the trial judge and the United States Court of Appeals for the Federal Circuit. *Stambler v. RSA Security Inc.*, 2003 WL 22749855, No. Civ. A. 01-0065-SLR (D. Del. Nov. 14, 2003), *aff'd*, 123 Fed. Appx. 982 (Fed. Cir. 2005).

Despite this adverse ruling — and despite the fact that most accused products and processes use the VeriSign SSL technology already found not to infringe — Stambler has filed multiple new actions on these patents in this Court. On May 12, 2008, Stambler filed an action against a number of other banking and financial services companies for infringement of the Asserted Patents, *Stambler v. JPMorgan Chase & Co., et al.*, Civil Action No. 2:08-cv-00204-DF-CE (the "*JPMorgan Chase* Action"). Because the defendants in the *JPMorgan Chase* Action were customers of VeriSign, on September 9, 2008, VeriSign sent a letter (the "VeriSign Letter") to Stambler's counsel noting, among other things, that:

- many defendants in the *JPMorgan Chase* Action are customers of VeriSign and have purchased VeriSign's Secure Sockets Layer ("SSL") digital certificates for use in securing online banking services;

- the jury in the Delaware Action rendered a verdict, and the court in the Delaware case entered judgment, affirmed on appeal, that VeriSign's SSL digital certificates do not infringe the Asserted Patents; and

- under the rule set forth by the United States Supreme Court in *Kessler v. Eldred*, 206 U.S. 285 (1907) (the "*Kessler* doctrine"), Stambler is barred from bringing a case against VeriSign's customers for their use of the same SSL digital certificates that were at issue in the Delaware Action.

(*See* Ex. A.)

In response to this letter, Stambler filed the Stambler DJ Action against VeriSign on September 12, 2008. In the Stambler DJ Action, Stambler seeks judgment that, among other things, his claims against the defendants in the *JPMorgan Chase* Action are not barred, even though in the *JPMorgan Chase* Action Stambler is asserting infringement based on the use of VeriSign SSL digital certificates. VeriSign thereafter filed a counterclaim against Stambler seeking, among other things, a judgment enjoining Stambler from asserting infringement of any claim of the '302 or '148 patents based on a VeriSign digital certificate or its ordinary and intended use.

Given this potentially dispositive effect, on November 14, 2008, the defendants in the *JPMorgan Chase* Action moved to stay that action pending resolution of the Stambler DJ Action. The JP Morgan Chase defendants noted that, among other things, their requested stay would promote judicial efficiency and economy. If VeriSign obtains that judgment, it would bar both the *JPMorgan Chase* Action and this action.

In this action, Defendants — like many of the defendants in the *JPMorgan Chase* Action — are all customers of VeriSign and use its SSL digital certificates for securing online transactions. Moreover, all of the Defendants use the exact same VeriSign digital certificates — VeriSign's SSL 3.0 digital certificates — that were the subject of the Delaware Action and that were found not to infringe the Asserted Patents. Because the Stambler DJ Action will resolve the issue of whether and to what extent Stambler may assert the '302 and '148 patents against Defendants' use of VeriSign's SSL 3.0 digital certificates given the judgment in the Delaware Action, a stay of this infringement action makes all practical sense. Without a stay, Defendants would be forced to expend extensive resources defending against infringement claims that

3

Stambler may not even have the right to assert. If VeriSign prevails in the Stambler DJ Action, Defendants' resources and the Court's resources in administering this action will have been wasted.

In contrast to the significant prejudice that would be suffered by Defendants absent the requested stay, Stambler would suffer no prejudice from a stay pending the resolution the Stambler DJ Action. First, Stambler voluntarily filed the Stambler DJ Action instead of defending the *Kessler* issue in the various other cases. As such, Stambler cannot claim prejudice in having that separate action decided first. Second, Stambler contacted many of the Defendants years ago concerning a license to the Asserted Patents — some as early as 1999 and 2000 — yet waited until almost 2009 to file suit. (Ex. B.) Given his nearly decade-long delay, Stambler cannot credibly claim prejudice if this action is stayed for a reasonable period of time until the Stambler DJ Action is resolved. Third, Stambler, the Defendants and the Court will all benefit from the determination in the Stambler DJ Action of whether Stambler has any right to bring the claims in the other actions. At a minimum, this determination will narrow and focus those actions and make their discovery and trial much more efficient. At a maximum, this determination will dispose of all the other Stambler actions.

For all these reasons, as explained in more detail below, this action should be stayed pending resolution of the Stambler DJ Action.

## FACTUAL BACKGROUND

### I. The Present Case.

Stambler filed his Complaint in this action on December 4, 2008 (D.I. 1), alleging that 46 defendants have engaged in online financial and banking services that infringe the '302 patent and '148 patent. This case is in its early stages: the Court has not entered a case schedule; initial

disclosures have not been made by any parties; discovery has not begun; and claim construction briefing has not begun.

Although Stambler has not served his infringement contentions in this case, he has served infringement contentions in the *JPMorgan Chase* Action (Ex. C), where he has made similar allegations of infringement against online financial and banking service providers. It is clear from those contentions that Stambler is asserting claims, including *the same claims* that he asserted in the Delaware Action (claims 1, 16, and 35 of the '148 patent and claim 34 of the '302 patent), against *the same VeriSign SSL technology* that was at issue in the Delaware Action — technology that was found not to infringe the '302 and '148 patents.

**II.     The Delaware Action.**

On February 2, 2001, Stambler filed the Delaware Action against five defendants, including VeriSign, alleging infringement of the Asserted Patents (as well as a third patent owned by Stambler). *Stambler v. RSA Security Inc.*, 2003 WL 22749855, at *1, No. Civ. A. 01-0065-SLR (D. Del. Nov. 14, 2003). Stambler alleged, among other things, that VeriSign's products using or supporting "secure Socket Layer version 3.0" infringed the Asserted Patents. *Stambler v. RSA Security, Inc.*, 2005 WL 352606, Nos. 04-1129,04-1147,04-1148, at *1 (Fed. Cir. Feb. 11, 2005). After more than two years of litigation, a jury trial was held from February 24 through March 7, 2003. *Stambler*, 2003 WL 22749855, at *1. The jury returned a non-infringement verdict in favor of VeriSign. *Id.* On April 21, 2003, the district court entered final judgment against Stambler on all of its infringement claims. *Id.* On May 2, 2003, Stambler moved for judgment as a matter of law as to VeriSign's inducement of infringement of claim 34 of the '302 patent or, in the alternative, for a new trial. *Id.* The district court denied Stambler's motion on November 14, 2003. *Id.* at *7.

The non-infringement verdict and subsequent post-trial judgment were affirmed by the Federal Circuit in 2005. *Stambler*, 2005 WL 352606, at *1. As part of its Opinion, the Federal Circuit described the accused technology:

> The patented methods enable parties to a transaction to assure the identity of an absent party and the accuracy of information involved in the transaction, thus providing for secure transactions and preventing fraud. SSL 3.0 is widely considered to be the standard method for conducting secured communications via the Internet. The SSL 3.0 protocol addresses two security issues pertaining to Internet communications. The protocol insures that parties communicating over the Internet are certain of each other's identity and that communications between the parties cannot be intercepted and deciphered by an unauthorized party.

*Id.* (internal citations omitted). After analyzing Stambler's various arguments on appeal, the Federal Circuit concluded that substantial evidence supported the jury verdict that SSL 3.0 — the latest version of the SSL protocol — did not infringe the Asserted Patents and affirmed that verdict. *See id.* at *3.

In the Delaware Action, Stambler broadly asserted his claims against many types of online transactions protected by SSL, including online banking. As part of his testimony during the 2003 jury trial, Stambler's infringement expert, Professor David Finkel, used a hypothetical of "John Smith" using his home computer to pay his cable bill by providing information via the Internet to his bank:

> A. Yes. So the example is that we have someone sitting at their home computer. It seems to be Mr. John Smith. And he want[s] to pay his bill and this is his cable bill and so he wants to send a message to his bank to pay $50 to Comcast and it lists his name and his credit card number.
>
> Q. Okay.
>
> A. And so now we see this message, this message is now being sent to the bank, and when the bank receives it, it will be able to read the message and then it will execute this transaction.

6

.

x

(Trial Trans. vol. C, at 357 (Feb. 26, 2003), Ex. D.)  The following trial demonstrative exhibit illustrates Professor Finkel's "Mr. Smith" online banking hypothetical:



(Ex. E; *see also* Trial Trans. vol. C, at 371-72, Ex. D.)  As shown above, it is the Bank Computer that allegedly verifies the home computer's identity in an online banking transaction.

It is this ***exact online banking technology*** that Stambler accuses Defendants of infringing in this action:

> Defendants have infringed and continue to infringe, directly, contributorily, and/or through the inducement of others, the claimed methods of the patents-in-suit by provision of their respective secure online banking products and/or services, including but not limited to online bill pay and secure funds transfer products and/or services.

(Compl. ¶ 51.)  Indeed, all of the Defendants are using VeriSign SSL 3.0 certificates, the exact certificates that were accused of infringement — and that were found not to infringe the Asserted Patents — in the Delaware Action.  These facts preclude Stambler from maintaining his suit against Defendants under principles of res judicata, collateral estoppel and the *Kessler* doctrine.

**III.    Stambler's Declaratory Judgment Action Against VeriSign.**

On September 12, 2008, in response to the September 9, 2008 VeriSign Letter (Ex. A), Stambler filed the Stambler DJ Action in this Court, seeking a declaration that Stambler is not tortiously interfering with VeriSign's business and that VeriSign may not enjoin Stambler from pursuing patent infringement cases against VeriSign's customers. (*See* D.I. 1 in *Stambler v. VeriSign, Inc.*, No. 2:08-cv-00348-DF (E.D. Tex.)).

VeriSign answered Stambler's Complaint on December 5, 2008, and also filed a counterclaim against Stambler for declaratory judgment that: (1) Stambler be enjoined from asserting infringement of any claim of the '302 and '148 patents based on a VeriSign digital certificate or its ordinary and intended use; and that (2) Stambler be enjoined from pursuing any action based on any VeriSign digital certificate or its ordinary and intended use. (D.I. 16, Counts I and II.) VeriSign also counterclaimed against Stambler for tortious interference with actual and prospective economic advantage. (*Id.*, Count III.)

On January 29, 2009, Stambler and VeriSign filed a report of their Rule 26(f) planning meeting. (D.I. 26.) In that report, VeriSign requested a final pretrial conference in October 2009. This timing would facilitate the orderly resolution of all Stambler actions in this Court and Defendants respectfully request that the Court adopt it. Stambler, on the other hand, requested a pretrial conference in October 2010, seeking two years to resolve a declaratory-judgment action that he brought that turns on the application of law to the prior Delaware and Federal Circuit rulings.

**ARGUMENT**

**I.    The Court Has Wide Discretion To Stay This Action.**

This Court "has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com*, 356 F. Supp. 2d 660, 662 (E.D. Tex.

8

2005) (*citing Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006) (*quoting Landis*, 299 U.S. at 254).

Courts have generally found that a stay is appropriate when independent proceedings involve similar or related actions. *See Bechtel Corp. v. Local 215, Laborers' Int'l Union of North America,* 544 F.2d 1207, 1215 (3d Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."); *see also Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

**II.    A Stay Of These Proceedings Is Warranted Under The *Landis* Balancing Test.**

Under *Landis* and its progeny, a stay of this case is warranted. A stay would not only advance each of the *Landis* factors, but is a common-sense approach that would enhance efficiency and conserve the resources of this Court and the parties.

In *Landis*, the Supreme Court held that, in considering whether to grant a stay district courts should "weigh competing interests and maintain an even balance." 299 U.S. at 254-255; *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109-1110 (9th Cir. 2005). The competing interests to be weighed include: (1) the possible prejudice to the nonmoving party versus the hardship or inequity the moving party may suffer in being required to go forward; (2) judicial efficiency; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a

stay."[1]  *See Lockyer*, 398 F.3d at 1110 (*citing Landis*, 299 U.S. at 254-255).  Here, each of these factors strongly favors granting Defendants' motion to stay.

### A. The Requested Stay Would Not Prejudice Stambler, But Proceeding Now Would Prejudice Defendants.

Staying this case pending the outcome of Stambler DJ Action would not "unduly prejudice or present a tactical disadvantage" to Stambler.  *See Datatreasury*, 490 F. Supp. 2d at 754.  A stay would simply require that Stambler first litigate the one-issue, one-defendant declaratory-judgment action that it chose to file before proceeding with a complex patent infringement action against more than forty defendants.

Stambler waited nearly 10 full years after first asserting the Asserted Patents against Defendants before bringing this action, and cannot credibly claim prejudice if this case is stayed until the Stambler DJ Action is resolved.  Indeed, if VeriSign's proposed 2009 trial date is adopted by the Court — and Defendants respectfully request that the Court do so — the Stambler DJ Action will be resolved by the end of this year.  Even if Stambler's proposed trial schedule is adopted by the Court, the Stambler DJ action will be resolved by the end of 2010 at the latest.  In either scenario, the Court may dispose of the Stambler DJ Action and its predominately legal issues on summary judgment well before trial.  Such a stay is justified given its benefits to efficiency and judicial economy, especially since Stambler waited nearly 10 years to file his Complaint.  Additionally, it does not appear that Stambler is providing competitive online services, so he cannot claim any competitive harm from a stay either.

---

[1] Courts in this jurisdiction have outlined a similar set of factors for deciding whether to stay litigation pending a patent reexamination proceeding:  "(l) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006) (citing *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

This case is in its early stages: the Court has not yet set a case schedule; initial disclosures have not been made by any party; discovery has not begun; and claim construction briefing has not begun. As such, a stay is appropriate and would have its maximum benefit on conserving the Court's and the parties' resources. *See Premier Int'l Associates v. Hewlett Packard Co.*, 554 F. Supp. 2d 717, 724-25 (E.D. Tex. 2008) (allowing motion to stay where case was "in its infancy" with trial nearly two years away and discovery having not commenced); *Datatreasury*, 490 F. Supp. 2d 749, 755 ("Much remains before this case is ready for trial. Neither the Court nor the parties have invested such resources as to make a stay . . . inefficient and inappropriate").

Defendants do not request an indefinite stay, but rather only until the Court decides the Stambler DJ Action. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) ("a stay must be 'so framed in its inception that its force will be spent within reasonable limits . . .'") (*quoting Landis*, 299 U.S. at 257). Absent a stay, the defendants in this case and in the *JPMorgan Chase* Action — **approximately 70 corporate entities** — would be forced to incur the substantial burden and expense of defending against patent infringement claims, including costly and burdensome discovery, that could all be barred by the Court's decision in the Stambler DJ Action.

### B.     A Stay Would Promote Judicial Efficiency.

The interests of judicial efficiency and economy strongly favor a stay. *See, e.g., Lockyer*, 398 F.3d at 1111 (citing the interest of prompt and efficient resolution of cases). The Stambler DJ Action presents limited legal issues, and likely will reach conclusion well before this complex, multi-party patent infringement action. Indeed, VeriSign is proposing a final pretrial conference in October 2009, while Stambler is proposing a final pretrial conference in October 2010. If the Court rules in favor of VeriSign in the Stambler DJ Action, its decision would

dispose of the present case. And even if the Court does not so rule, its decision would still narrow and focus this action by likely eliminating a number of defenses. Thus, the interests of efficiency and judicial economy would be served by staying the proceedings here while the Court decides the Stambler DJ Action.

### C.     The Requested Stay Would Serve The Orderly Course Of Justice.

A stay serves the "orderly course of justice" if it simplifies "issues, proof, and questions of law." *Lockyer*, 398 F.3d at 1110; *see also Premier Int'l Assoc. LLC v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717, 720 (E.D. Tex. 2008) (stay appropriate pending patent reexamination because, *inter alia*, reexamination could eliminate most issues in pending patent infringement litigation). As discussed above, the Stambler DJ Action involves the question of whether Stambler is barred, under the *Kessler* doctrine and otherwise, from asserting the Asserted Patents against VeriSign's customers given the prior judgment in the Delaware Action that VeriSign's SSL digital certificates do not infringe those patents. *See Stambler v. RSA Security, Inc.*, 2005 WL 352606, at *1; *see also MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) (affirming preclusive effect of prior judgment, stating "[t]he *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent").

There is substantial reason to believe that VeriSign's arguments have merit, because the accused technology in this action is identical to the technology that was at issue in the Delaware Action. Indeed, Stambler's infringement expert used online banking transactions to illustrate his infringement opinion in the Delaware case. Such online banking transactions are the exact type of transactions for which Stambler seeks to hold Defendants liable in this action. The jury in the Delaware Action evaluated SSL and returned a non-infringement verdict in favor of VeriSign, and that decision was affirmed by the Federal Circuit. Given that the VeriSign SSL technology

12

has already been found to not infringe, this Court should not require the parties to proceed through discovery only to later learn that the time and effort they expended was unnecessary.

### D. The Requested Stay Would Prevent Inconsistent Rulings.

A stay of this action and the *JPMorgan Chase* Action would also eliminate the possibility of inconsistent rulings regarding the effect of the Delaware Action in each of the cases. Given that VeriSign is most knowledgeable about the Delaware Action and about its own technology, VeriSign is in the best position to litigate whether or not the *Kessler* doctrine applies. The Court will have the most complete record on this issue in the Stambler DJ Action, and ruling on that case first would likely prevent the possibility of inconsistent rulings if a case with a more limited record on this issue proceeded first. For example, on a motion for summary judgment in this action or the *JPMorgan Chase* Action, the Court would likely have a less complete record than in the Stambler DJ Action and may rule in a way that differs from how the Court will rule on a more complete record. The specter of multiple decisions and possible inconsistent rulings on the same issues regarding the prior Delaware action counsels strongly in favor of staying this action and resolving the Stambler DJ Action first.

### E. Stambler's Arguments Against Application Of The *Kessler* Doctrine Do Not Weigh Against A Stay, And Only Confirm Its Necessity.

In his opposition to the motion for stay in the *JPMorgan Chase* Action, Stambler argued that a stay should not be granted because he is allegedly likely to prevail on the merits in the Stambler DJ Action. That argument, however, admits the existence of a genuine issue in the Stambler DJ Action and confirms the need for a stay pending resolution of that action. Regardless of who wins the Stambler DJ Action, the Court's decision will at least narrow and focus the issues in this action, and may dispose of this litigation completely.

Even if Stambler's arguments against application of the *Kessler* doctrine were somehow relevant to the determination of this motion for a stay, those arguments are without merit. For example, Stambler argued in the *JPMorgan Chase* Action that the *Kessler* doctrine does not apply because he is not asserting the same claims against VeriSign's customers that he asserted against VeriSign in the Delaware Action. But in the *JPMorgan Chase* Action, Stambler is asserting every one of the claims previously asserted in the Delaware Action (claims 1, 16, and 35 of the '148 patent and claim 34 of the '302 patent). (*See* Ex. C.) Stambler also argued in the *JPMorgan Chase* Action that the accused products in the Delaware Action are different from the accused products in the *JPMorgan Chase* Action. But in the Delaware Action Stambler argued that the use of Verisign SSL certificates for online banking services infringed the '148 and '302 patents. And those are the same allegations VeriSign is making in this action and the *JPMorgan Chase* Action. (*Id.*) ("Defendant offers secure online bill payment services and secure online funds transfer services using Secure Sockets Layer ('SSL') protocol") Finally, Stambler argued that he is not accusing of infringement the general use of SSL technology in online banking as he did in the Delaware Action. But Stambler's claim charts in the *JPMorgan Chase* Action make clear that Stambler is indeed accusing of infringement the general use of SSL technology in online banking, which necessarily includes the latest version of SSL 3.0 technology. (*Id.*) ("When Defendant and its customer communicate using SSL," the computers "complete a handshake process that results in the generation of a 'master secret,' which is used to generate other keys and secrets") Stambler's arguments against application of the *Kessler* doctrine are factually incorrect and therefore without merit. As discussed above, however, a stay is appropriate regardless of who wins the Stambler DJ Action because resolution of that action one way or the other will streamline or eliminate this action.

14

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court stay all proceedings in this action until the Stambler DJ Action is resolved.

Dated:  February 18, 2009                                  Respectfully submitted,


*Michael E. Jones*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
110 North College
500 Plaza Tower
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile:  (903) 593-0846

and

John M. Desmarais (*pro hac vice*)
Peter J. Armenio (*pro hac vice*)
James E. Marina (*pro hac vice*)
John C. Spaccarotella (*pro hac vice*)
Wanda French-Brown(*pro hac vice*)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

**ATTORNEYS FOR DEFENDANTS
The Charles Schwab Corporation, Charles Schwab & Co., Inc., Charles Schwab Bank, E*TRADE Financial Corporation, E*TRADE Bank, Fidelity Brokerage Services LLC, National Financial Services LLC, FMR LLC, Paypal, Inc., and American Express Company**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 18, 2009. Any other counsel of record will be served by first class mail on this same date.

*/s/ Michael E. Jones*
Michael E. Jones

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that Allen F. Gardner, counsel for The Charles Schwab Corporation, Charles Schwab & Co., Inc., Charles Schwab Bank, E*TRADE Financial Corporation, E*TRADE Bank, Fidelity Brokerage Services LLC, National Financial Services LLC, FMR LLC, Paypal, Inc., and American Express Company, has complied with the meet and confer requirement in Local Rule CV-7(h).

This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 18, 2009 via telephone conference between T. John Ward, Jr., counsel for Plaintiff Leon Stambler, and Allen F. Gardner. No agreement could be reached because plaintiff does not agree that a stay is appropriate for this case. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Michael E. Jones*
Michael E. Jones