# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

LEON STAMBLER         §
                           §
                           §
vs.                            §         CASE NO. 2:08-CV-462-DF-CE
                           §
                           §
MERRILL LYNCH & CO., INC., et al.    §

## MEMORANDUM OPINION AND ORDER

The Court held a Markman hearing on June 29, 2010.[1]  After considering the submissions and the arguments of counsel, the Court issues the following order regarding claim construction:

## I.  Background of the Technology

Plaintiff Leon Stambler asserts United States Patent Nos. 5,793,302 ("the '302 patent") and 5,974,148 ("the '148 patent") (collectively, "Stambler patents") against remaining Defendants[2].  The Stambler patents have a common specification and claim priority to November 17, 1992.  Plaintiff asserts claims 7, 41, 44, 46, 47, 48, and 55 of the '302 patent and claims 28, 34, and 35 of the '148 patent.  The Stambler patents are entitled "Method for Securing Information Relevant to a Transaction" and teach improvements to conducting financial transactions thereby minimizing fraud on the parties.  The patents address two types of fraud that can occur in multi-party transactions, especially electronic transactions.  First, the patents disclose a system for authenticating that

---

[1]  The Court also held a Markman hearing in a related case, *Stambler v. JP Morgan*, 2:08-cv-204, on March 25, 2010.  The claim construction order for that action, Dkt. No. 393, was issued on April 9, 2010.  That order is incorporated by reference and referred to as *JP Morgan*.

[2]  Remaining defendants include Jack Henry & Associates, LegacyTexas Bank and associated entities, HSBC USA Inc. and associated entities, and First National Bank and associated entities.  The remaining defendants will be referred to herein as "Defendants."

information relating to the financial transaction has not been fraudulently authored, such as the amount on a check. Second, the patents teach authenticating the parties to a transaction. For example, the transaction system of the patents would detect when a person cashing a check is not the intended recipient.

The invention uses what is called a "variable authentication number (VAN)" to authenticate the transaction information as well as the parties. A VAN (a disputed term), as disclosed in the embodiment, contains an encoded key that contains information about at least one of the parties and at least some of the transaction information. This encoded key is called a joint key. The joint key might, for example, contain the intended recipient's tax identification number, the check amount, and the payor's identifying information. When an endorsed check is presented at the recipient's bank, the recipient's bank first verifies whether the party presenting the check is in fact the intended recipient. After verifying that the recipient is authentic, the recipient's bank requests that the payor's bank transfer the funds in accordance with the check's instructions. The payor's bank will then verify whether the document has been altered based upon the document information encoded into the joint key. Additionally, the payor's bank will be able to verify whether the payor did in fact originate this check based upon the payor information encoded into the joint key. According to the embodiment, only selected parties would be able to decode the VAN to access the joint key, thereby making it nearly impossible for the VAN to be fraudulently created or modified.

Plaintiff previously pursued claims under the asserted patents before the District of Delaware in 2001. *See Stambler v. RSA Sec. Inc.*, No. 01-65-SLR (D. Del.). The Delaware court issued its claim construction order in 2003. A number of the terms that the Delaware court construed are at issue in this litigation: VAN; secret key of the first party/payor/originator; instrument; previously

issued; and credential. Defendants argue that Plaintiff should be estopped from pursuing constructions that are different than those it pursued in the Delaware court when the Delaware court adopted Plaintiff's proposal. Plaintiff argues that the constructions in the Delaware court are based upon dictionary definitions almost exclusively and that *Phillips* is intervening law regarding claim construction.

## II.     General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id*. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id*. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own

lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id*. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. Although the claims themselves may provide guidance as to the meaning of particular terms,

those terms are part of "a fully integrated written instrument." *Id*. at 1315 (*quoting Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id*. at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id*. Nevertheless, the prosecution history is intrinsic evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id*. at 1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id*. at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id*. What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id*. The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

6

## III. Agreed Terms

The parties have agreed to definitions of the following terms:

| Term | Claim Number | Agreed Construction |
|---|---|---|
| "associated with" | '302 claims 7, 41, 44, 47, 51<br>'148 claim 28 | Identified with or having a connection to |
| "if the at least a portion of the received funds transfer information and the VAN are determined to be authentic" | '302 claims 41, 51<br>'148 claim 28 | if the at least a portion of the received funds transfer information is unchanged and the VAN is not fraudulent |
| "payment" | '302 claim 44<br>'148 claim 28 | Compensation in exchange for goods or services or the discharge of a debt |
| "payment instrument" | '148 claim 28 | A document (including paper or electronic) that is used to transfer funds to a recipient party in connection with a payment |
| "instrument for transferring funds" | '148 claims 34, 35 | A document (including paper or electronic) that is used to transfer funds to a recipient party |
| "including the VAN with the instrument for subsequent use in attesting tot he authenticity of the instrument" | '148 claim 34 | Including the VAN with the instrument for subsequent use in verifying that the information in the instrument has not changed and verifying that the instrument originated from the first party |
| "one or more pieces of payment information payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number" | '148 claim 35 | One or more pieces of the following payment information: an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number |
| "creating an error detection code (EDC1) by coding" | '148 claim 35 | Creating an error detection code (EDC1) by applying an algorithm to |

| | | information in such a manner as to permit detection of changes but without complete recovery of the original information |
|---|---|---|
| "the originator's VAN being usable to determine the authenticity of the one or more pieces of payment information" | '148 claim 35 | The originator's VAN being usable to verify that the one or more pieces of payment information have not changed and to verify that the one or more pieces of payment information originated from the originator party |

Joint Claim Construction Chart, Dkt. No. 393.

## IV.    Disputed Terms

### A.    "a third party for determining"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| a party, other than the first or second parties, that performs the determining step of the claim | a party different from the party or parties performing the other steps of the claim, for determining | a party, other than the first or second parties, that performs the determining step of the claim |

The term "a third party for determining" appears in claim 41 of the '302 patent.  The parties primarily dispute whether the determining third party of the disputed claim term may perform any other step of the claimed methods.  The court previously heard and rejected Defendants' position in the *JP Morgan* claim construction.  Plaintiff has proposed the Court's construction from *JP Morgan*.

Defendants ask the Court to revisit its prior claim construction and argue that they present a novel justification for their construction.  Defendants argue that the plain meaning of the claim requires their construction, but then cite to several embodiments where the "third party" is the financial institution that is also practicing other steps of the claimed method.  Defendants pointed

to no evidence requiring the "third party" of claim 41 to be uninvolved in the remaining claim steps.

Accordingly, the Court adopts is prior construction and defines "a third party for determining" to be

"a party, other than the first or second parties, that performs the determining step of the claim."

### B. "variable authentication number (VAN)"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both, the number generated by coding information associated with or related to a transaction, document (paper, electronic, or otherwise), or thing with either a joint key or information associated with or assigned or related to at least one party to the transaction or issuance of the document or thing | a variable number that can be used by a recipient to verify the identity of another who is a party to a transaction and the integrity of information relevant to the transaction either with a joint code produced from information associated with the party or directly with information associated with the party | an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both |

The disputed term "variable authentication number" appears in asserted claims 41, 44, 46, 47, 48, and 55 of the '302 patent and claims 28, 34, and 35 of the '148 patent. The Court's prior construction makes explicit the requirements for authentication, but does not import any limitations regarding what sort of information may be utilized in synthesizing a VAN.

Plaintiff attempts to import additional limitations from the claims or the preferred embodiments that require some information from the transfer to be used to create the VAN. However, this limitation already appears elsewhere in the asserted claims and, as a result, additional construction of the term beyond the Court's prior construction is unnecessary. Defendants' proposed

construction similarly attempts to collapse limitations from elsewhere in the claims into the VAN. Accordingly, the Court adopts its prior construction and defines "variable authentication number" to mean "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both."

### C. "secret key of the payor/first party/originator"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| a private key that is created by the payor/first party/originator, or an entity originating an instrument on the payor's/first party's/originator's behalf, by coding information associated with or related to the payor/first party/originator, which is capable of being separately created by a party intended to authenticate the instrument | key that is generated by coding information associated with and known, prior to any coding, only by the payor/first party/originator party for use in any future transactions | a key that is known only to the payor and those intended to know it |

The term "secret key of the payor/first party/originator" appears in claims 28, 34, and 35 of the '148 patent. The Court has previously construed the term to mean "a key that is known only to the payor and those intended to know it." Plaintiffs argue that the only key used in the context of creating a VAN in a fund transfer embodiment is the joint key and thus the joint key must be a "secret key." However, the joint key is never described as "secret" or "belonging to a party." Rather, the joint key is derived from the payor/first party/originator's PIN which is secret and known only to the payor/first party/originator and those intended to know it. Accordingly, the Court adopts its prior construction and defines "secret key of the payor/first party/originator" to mean "a key that

is known only to the payor/first party/originator and those intended to know it."

### D.     "credential"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| a non-secret document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party | a document or thing obtained from a trusted source that establishes the identity of a party when it is transferred or presented | a document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party |

The disputed term "credential" appears in claims 7, 47, and 55 of the '302 patent. The Court has previously construed "credential" to mean "a document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party." Plaintiff seeks to add the limitation "non-secret" while Defendants seek to impose a higher standard on what may serve as a credential. The Court finds that Defendants' proposed "establishes the identity" language is too restrictive. A credential is evidence of identity, and can aid in determining identity, but need not establish identity. Plaintiff repeats his arguments from *JP Morgan* that the credentials mentioned in the specification are not secret and that the use of the terms in claim 47 and 55 without language specifying that the credential contains non-secret information necessitates their proposed "non-secret" construction. However, if credentials were always non-secret then the requirement that the credential of claim 7 contain "non-secret information" would be superfluous, and the patentee would not have included it in the claims. Further, the distinction between the credential in claim 7 and the credential in claims 47 and 55 would be swallowed by Plaintiff's proposed construction. Beyond requiring the credential to contain non-secret information, Plaintiff's construction requires

that the credential contain no secret information. The specification makes no such requirement clear, and reading implicit limitations of the embodiments into broadly drafted claim terms would be improper. Accordingly, the Court adopts its previous construction and defines "credential" to mean "a document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party."

### E. "trusted entity / party"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| a party/entity who is trusted or whose integrity is relied upon to issue credentials | agency having officially recognized authority to issue credentials | None |

The disputed term "trusted entity / party" appears in claims 7, 47, and 55 of the '302 patent. The proposed constructions for "trusted entity/party" define the term based on the entity/party's authority in issuing credentials, which is circular and adds no clarity to the claims. The trusted entities are relied upon to issue credentials because they are trusted, and they are trusted to do so because they have the authority or ability to establish or confirm a party's identity. Accordingly, the Court construes "trusted entity / party" to mean "an entity / party that has the authority or ability to establish or confirm a party's identity."

**F.     "information for identifying the first/second account of the first/second party"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| information that is used to identify an account of the first/second party | Information for identifying the first account of the first party: information that is used to identify the first account of the first party of the first party from which funds are to be transferred to the second account of the second party<br><br>Information for identifying the second account of the second party: information that is used to identify the second account of the second party into which funds are to be transferred from the first account of the first party | information that is used to identify an account of the first/second party |

This disputed term appears in claim 41 of the '302 patent.  Plaintiff seeks the same construction adopted by the Court in *JP Morgan* while Defendants seek to import limitations from other parts of the claim and elsewhere.  Defendants' proposed construction fails to clarify the disputed term and renders meaningless other limitations of the claim.  Accordingly, the Court adopts its prior construction and defines "information for identifying the first/second account of the first/second party" to mean "information that is used to identify an account of the first/second party."

### G.     "originator party" / "recipient party"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| originator party: plain meaning; alternatively, a party that creates an [instrument for transferring funds]<br><br>recipient party: plain meaning; alternatively, the intended recipient of a funds transfer | originator party: party whose funds are being transferred<br><br>recipient party: party who receives the funds transfer from the originator party | None |

This term appears in claim 35 of the '148 patent. The parties primarily dispute whether the originator party must be the source of the funds or merely the source of an instrument for transferring funds. The plain language of the claim indicates that the originator party creates an instrument for transferring funds but does not require that the funds be transferred from the originator party. The specification supports this position because it indicates that the invention can be used for generating and processing employee paychecks. (3:66-67). Paychecks for the transfer of funds from employers to employees are typically generated by third parties. Additionally, Defendants' proposed construction requires an actual transfer of funds rather than the generation of an instrument for the transfer of funds. Although the preamble of claim 35 of the '148 patent recites a "funds transfer method," the steps of the method do not require an actual transfer. Reading such a limitation into the claim by redefining the parties would be improper. Also, the Court notes that the constructions advanced by both parties are circular, defining the disputed terms using their interpretations of what the remainder of the claim requires. After reviewing the arguments of the parties, the Court adopts the plain and ordinary meaning for "originator party" and "recipient party."

**H.** **"first party" / "second party"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| First party: plain meaning; alternatively, claim 34 of the '148 patent: a party that creates an instrument; claims 41 and 55 of the '302 patent: a party identified with a first account<br><br>Second party: plain meaning; alternatively, claim 34 of the '148 patent: a party that is intended to receive funds; claims 41 and 55 of the '302 patent: a party identified with a second account | First party: party whose funds are being transferred<br><br>Second Party: party who receives the funds transferred from the first party | None |

"First party" and "second party" appear in claim 34 of the '148 patent and claims 41 and 55 of the '302 patent. The parties primarily dispute whether these terms have a rigid definition across all claims or their meaning should be supplied by the context of the claims in which they appear. As with "originator party" and "recipient party" above, both Plaintiff and Defendants attempt to construe these terms in a circular fashion, with information about the role of the parties as defined in the claims imported into the term constructions. The court is unpersuaded by these arguments and finds that saddling these terms with information the jury should discern from the context of the claims is unnecessary. Further, Defendants' proposed definition improperly imports limitations not found in the claims in question by requiring an actual transfer of funds to occur. Accordingly, the Court adopts the plain and ordinary meaning for "first party" and "second party."

15

I.     **"the first/second account information being stored in a first/second storage means"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Prior Construction |
|---|---|---|
| This element is not subject to 35 U.S.C. § 112, ¶ 6.<br><br>information [associated with] the first/second account being stored in a first/second place for storing information<br><br>Alternatively, if the Court concludes this element is subject to 35 U.S.C. § 112, ¶ 6:<br><br>Function: storing<br><br>Structure: document, files, memory, or other compuer storage, tables, personal storage media | This term is a means plus function limitation as defined by 35 U.S.C. § 112, ¶ 6:<br><br>Function: storing the first/second party's account information<br><br>Structure: first/second party's bank's computer | Delaware:<br>First/second storage means: a first/second place for storing information, which can include a computer file |

The disputed term "the first/second account information being stored in a first/second storage means" appears in the preamble of claim 41 of the '302 patent. The parties primarily dispute whether this term is subject to 35 U.S.C. § 112, ¶ 6. Assuming the term is subject to § 112, ¶ 6, the parties further dispute both the function and the structure supported by the specification.

Plaintiff argues that the term "storage means" was well defined in the art and that no means plus function construction is necessary. Defendant argues that the use of the word "means" creates a presumption of means plus function and that Plaintiff has failed to rebut that presumption. The Court finds that Plaintiff has established that a means plus function construction is not necessary because the term "storage means" was well defined in the art at the time of the invention. Plaintiff

also argues, and the court agrees, that the claim is not drafted in standard § 112, ¶ 6 format (e.g. "means for [performing a function]").  Accordingly, the Court construes "first/second storage means" to mean "first/second place for storing information, which may include a computer file."

**J.** **"error detection code"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| the result of applying an algorithm to information in such a manner as to permit detection of changes but without complete recovery of the original information | coded information that is compared by the recipient to detect if there are any changes from the information originally encoded into the error detection code | the result of applying an algorithm to information in such a manner as to permit detection of changes but without complete recovery of the original information [by agreement] |

The disputed term "error detection code" appears in claims 46 and 55 of the '302 patent and claim 35 of the '148 patent.  When used in the claims, the "error detection code" is used to generate a VAN.  Neither party's construction defines the disputed term such that it can be used to generate a VAN.  Plaintiff cited to the record supporting its construction, but failed to define the disputed term in a grammatically sensible way.  Defendants' proposed construction imports limitations absent from the claim while also failing to make grammatical sense.  The portion of the specification cited by Plaintiff indicates that an error correcting code must allow for detection of changes in the coded information without complete recovery of the original information.  (5:39-44).  Accordingly, the Court construes "error detection code" to mean "an algorithm for coding information that, when applied to original information, creates coded information wherein changes to the coded information can be detected without complete recovery of the original information."

### K.     "coding"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| Transforming information by applying a known algorithm | The meaning of "coding" should be supplied within the context of the phrase in which it is used.<br><br>"Coding" when used in the context of generating a VAN means: "transforming information into a VAN by applying a known algorithm under which the resulting VAN can either be uncoded by reversing the coding operation or compared to a VAN regenerated by applying the same known algorithm to the information."<br><br>"Coding" in the context of "creating an error detection code (EDC1) by coding" is a different contextual use of coding | Transforming information by applying a known algorithm [by agreement; also adopted by Delaware court] |

The disputed term "coding" appears in claims 7 and 41 of the '302 patent.  Plaintiff argues

that "coding" should be construed as defined in the specification while Defendant argues that a

narrower definition is necessary because various claims of the patent refer to both "coding" and

"uncoding."  However, construing "coding" in light of the patentee's use of "uncoding" does not

require the Court to import various limitations from other claims and the specification.  The

specification defines a coder as a device that "[utilizes] a known algorithm" to code data from one

form to another.  (3:37-48).  The same passage defines an uncoder as a device that reverses the

process performed by the coder to recreate the original data. *Id.* Accordingly, the Court construes "coding" to mean "transforming information by applying a known algorithm" and "uncoding" as "transforming coded information back into its original state."

### L.     "payor" / "payer"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| A person or entity who pays, or who is to make a payment. The terms refer to the same party. | Payor: party paying for or purchasing goods or services<br><br>Payer: indefinite | Plain meaning. The terms refer to the same party. [by agreement] |

The disputed terms "payor" and "payer" appear in claim 28 of the '148 patent. The parties' primary dispute is whether "payor" and "payer" refer to the same entity. Defendants additionally seek to limit the definition based the underlying purpose of any payment made by the payor. Defendants argue that the term "payer" is insolubly ambiguous and that the Court should invalidate any claims containing the term.

"Payer" and "payor" are alternate spellings of the same word, and in the context of claim 28 the two clearly refer to the same entity. Furthermore, the defendants in *JP Morgan* did not find the term to be ambiguous and did not even seek construction by the court. In order to find the term indefinite, the Court must determine that it is insolubly ambiguous or otherwise not amenable to construction. That is clearly not the case. Accordingly, the Court construes "payor" and "payer" to refer to the same entity and defines that entity to be "a person or entity who pays, or who is to make a payment."

### M. "previously issued"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| issued before the execution of the steps recited in the claim; the "previously issued" limitation is not a separate step in the claimed methods | issued before the execution of the other steps recited in the claim; the "previously issued" limitation is a separate step | issued before the execution of the steps recited in the claim; the "previously issued" limitation is not a separate step in the claimed methods |

The phrase "previously issued" appears in claims 7, 47, and 55 of the '302 patent. Plaintiff argues that "previously issued" describes "credential" in the asserted claims and is not a separate step that must be performed to practice the method. Defendants argue that "previously issued" requires a separate step.

As explained in the *JP Morgan* claim construction order, using "previously issued" to describe "credential" does not require the credential to be issued as part of the claimed method. Accordingly, the Court construes "previously issued" to mean "issued before the execution of the steps recited in the claim" and finds that the "previously issued" limitations are not separate steps of the claimed methods.

### N. "determining whether the at least a portion of the received funds transfer information is authentic by using the VAN"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| using the VAN to determine that the at least a portion of the funds transfer information has not changed and to determine the origin of the at least a portion of the received funds transfer information | using the VAN to determine that the received funds transfer information has not changed and that the received funds transfer information originated from the first party to the funds transfer | None |

The disputed term appears in claim 41 of the '302 patent. The parties agree that the VAN

must be used to determine that at least a portion of the funds transfer information has not changed and to determine the origin of the funds transfer information. Defendants' construction attempts to read out "the at least a portion of" from the disputed term, however, and this is improper. Further, Defendants' construction attempts to require the first party to be the origin of the funds transfer, which is not required by the claims or the specification. The Court adopts Plaintiff's proposed construction because it specifies what is required to authenticate the funds transfer information while maintaining the scope of the disputed claim term.

O. **"determining whether the at least a portion of the received funds transfer information is authentic by using the VAN and the credential information"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction | The Court's Prior Construction |
|---|---|---|
| using the VAN and the credential information to determine that the at least a portion of the funds transfer information has not changed and to determine the origin of the at least a portion of the received funds transfer information | using the VAN and the credential information to determine that the received funds transfer information has not changed and to determine that the received funds transfer information originated from a party to the funds transfer. | None |

The disputed term appears in claim 51 of the '302 patent and is required for infringement of asserted dependent claim 55. As with the disputed "determining" term from claim 41, the parties agree that in this step an infringer must verify that a portion of the payment information has not changed and to determine the origin of the transfer information. As above, Defendants attempt to import additional limitations such as requiring the origin of the funds transfer information to be a party to the transaction while also reading "the at least a portion of" out of the claim. As above,

Defendants' construction is improper.  The Court adopts Plaintiff's proposed construction because it specifies what is required to authenticate the funds transfer information while maintaining the scope of the disputed claim term.

**V.      Conclusion**

The court adopts the constructions set forth in this opinion for the disputed terms of the '302 and '148 patents.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

SIGNED this 24th day of September, 2010.


CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE